**In re CONSECO, INC., et al., Debtors.**

**No. 02 B 49672.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Nov. 17, 2003.

Anne Marrs Huber, James Sprayregen, Kevin Morris, Roger J. Higgins, Timothy D. Elliott, Ross M. Kwasteniet, Anup Sathy, Kirkland & Ellis, Micah Marcus, Chicago, IL, for Debtor.

Richard C. Friedman, Office of U.S. Trustee, Chicago, IL, U.S. Trustee.

## MEMORANDUM OPINION

CAROL A. DOYLE, Bankruptcy Judge.

Many parties filed objections to the confirmation of the 6th Amended Plan ("Plan") of Conseco, Inc. and its related reorganizing debtors ("debtors"). Most objections were resolved, but two remained unresolved at the confirmation hearing on September 9, 2003. This opinion addresses one issue raised in one of those objections: whether the Plan may properly include the release of nondebtors by one group of creditors, the holders of Trust Originated Preferred Shares of Conseco, Inc. (collectively referred to as "TOPrS"). The TOPrS release is part of a settlement reached between the TOPrS Committee and the debtors. The objectors contend that the TOPrS release violates § 524(e) of the Bankruptcy Code because it releases nondebtors. In the alternative, they argue that a release of nondebtors should be permitted only in unusual circumstances, which do not exist in this case. The court rejects these arguments. Section 524(e) does not bar the inclusion of consensual releases of nondebtors in a Chapter 11 plan. The TOPrS release may be included in the Plan because it is voluntary and given in exchange for a distribution to which the TOPrS are not otherwise entitled under the best interests of creditors test in 11 U.S.C. § 1129(a)(7)(A)(ii). The objection is therefore overruled.[1]

### 1. Background

Conseco, Inc. and its many subsidiaries have a complex financial structure, with various layers of bank and bond financing. The TOPrS own preferred shares that are subordinated to most other creditors. The United States Trustee appointed a committee to represent the TOPrS. The debtors originally proposed a plan based on a $3.8 billion valuation of the debtors. Under this valuation, the TOPrS are not entitled to any distribution under the "best interests of creditors test" in 11 U.S.C. § 1129(a)(7)(A)(ii), which requires that each creditor who has not accepted the plan receive at least what it would get in a Chapter 7 liquidation. The TOPrS Committee objected to the debtors' plan, contending that the debtors are worth significantly more than $4.8 billion. If the debtors are valued at $4.8 billion or higher, the TOPrS would be entitled to a distribution under § 1129(a)(7)(A)(ii).

As part of the confirmation hearing on an earlier version of the Plan, the court conducted a lengthy trial to determine the value of the debtors for purposes of § 1129(a)(7)(A)(ii). At the trial, the TOPrS Committee and the debtors each tried to prove that its valuation was correct. While the court was preparing its decision, the TOPrS Committee and the debtors reached a settlement.

Under the settlement, the TOPrS Committee and the debtors agreed that the value of the debtors for purposes of § 1129(a)(7)(A)(ii) is $3.8 billion, the amount the debtors attempted to establish at trial. The TOPrS' distribution under the Plan is $0, because the TOPrS are not entitled to a distribution if the debtors are valued at $3.8 billion. Instead, the settlement agreement provides that TOPrS who do not opt out of the settlement will receive a distribution of 1.5% of New Conseco common stock, warrants for New Con-

---

1. The court ruled orally on this issue and the other issues raised in the two objections at the confirmation hearing on September 9, 2003.

This memorandum opinion more fully addresses the release issue.

seco stock, and a share of potential post-confirmation litigation recoveries. This distribution comes from senior creditors who will give participating TOPrS a portion of the distribution to which the senior creditors are entitled under § 1129(a)(7)(A)(ii). TOPrS who participate in the settlement give a broad release to all third parties for almost any claims relating to Conseco or its subsidiaries. The debtors filed a motion to approve this settlement under Bankruptcy Rule 9019. They also included the basic terms of the settlement and release in Article V, Par. I of the Plan.

The objectors are present and former TOPrS (the "Lead Plaintiffs") who filed a lawsuit alleging violations of various securities laws in connection with their purchase of Conseco's Trust Originated Preferred Shares. The Lead Plaintiffs object to the TOPrS release because it releases non-debtors, including defendants in their class action.

### 2. Is the TOPrS Release Permissible?

■ The Lead Plaintiffs first argue that the TOPrS release violates 11 U.S.C. § 524(e) of the Bankruptcy Code because it releases entities other than the debtors. Section 524(e) provides that the "discharge of a debt of the debtor does not affect the liability of any other entity on ... such debt." Citing cases from other circuits, the Lead Plaintiffs contend that this provision forbids the release of claims against non-debtors. However, the 7th Circuit has authoritatively rejected this argument. In *In re Specialty Equip. Co., Inc.*, 3 F.3d 1043, 1047 (7th Cir.1993), the 7th Circuit held that § 524(e) provides only that the discharge of a debt of the debtor does not alter any other party's liability on the debt; it does not prohibit the inclusion of consensual releases in a Chapter 11 plan.

The Lead Plaintiffs also argue that, to the extent third party releases are ever permissible under the Bankruptcy Code, the TOPrS release is too broad and should not be included in the Plan. They cite various cases in which courts have held that a Chapter 11 plan cannot include a non-consensual release of third parties unless there are unusual circumstances. *E.g., In re Dow Corning Corp.*, 280 F.3d 648, 657 (6th Cir.2002). They assert that the requisite "unusual circumstances" do not exist here.

The Lead Plaintiffs misapprehend the nature of the releases given by participating TOPrS in Article V of the Plan. It is not a compulsory release that would require justification by special circumstances. Rather, the TOPrS' release is part of a voluntary settlement that may be included in the Plan pursuant to 11 U.S.C. § 1123(b)(6).[2] Therefore, the cases relied upon by the Lead Plaintiffs are irrelevant.

The Lead Plaintiffs may have confused the present consensual TOPrS release with previous, non-consensual releases that have been removed from the Plan. Under Article X of earlier versions of the Plan, all creditors who accepted a distribution under the Plan would release certain non-debtors, regardless of whether the creditors voted to accept the plan. In *Specialty Equipment*, the 7th Circuit held that consensual releases of non-debtors are permissible, and that creditors who vote to accept a plan containing releases of non-debtors have consented to the releases. 3 F.3d at 1047. The court did not address whether creditors who did not vote for the plan could be required to release non-debtors. The debtors in this case argued that creditors who did not vote in favor of the plan but accepted a distribution under

---

**2.** Section 1123(b)(6) provides that a plan may "include any other appropriate provision not inconsistent with applicable provisions of this title."

it should be deemed to have consented to the releases. However, under § 1129(a)(7)(A)(ii), a plan cannot be confirmed unless each non-accepting creditor gets at least as much as it would get in a Chapter 7 liquidation. Under previous plan provisions, creditors who did not vote to accept the plan but were clearly entitled to a distribution in a Chapter 7 liquidation had to release non-debtors to receive a distribution. These provisions violated the best interests of creditors test because they forced creditors to accept the release or to give up the distribution to which they were entitled under § 1129(a)(7)(A)(ii). In addition, under these circumstances, a creditor's mere acceptance of a distribution under the plan cannot be construed as a voluntary consent to the release.

After the court informed the parties that it would not confirm a plan containing third party releases by creditors who did not accept the plan, the debtors redrafted the Plan. In the 6th Amended Plan, each creditor receiving a distribution under the Plan was given the opportunity to opt out of the release of non-debtors contained in Article X of the Plan. The Article X release now binds only those creditors who agreed to be bound, either by voting for the Plan or by choosing not to opt out of the release. Therefore, the Article X release is purely consensual and within the scope of releases that *Specialty Equipment* permits.

The TOPrS release in Article V, Par. I(2) of the Plan is completely separate from the release in Article X. The TOPrS release is not imposed as a condition to TOPrS receiving a distribution to which they are entitled under § 1129(a)(7)(A)(ii). Under the agreed $3.8 billion value of the debtors, the TOPrS are not entitled to any distribution under § 1129(a)(7)(A)(ii). Rather, participating TOPrS will receive the distribution described in Article V of the Plan only as part of a separate and completely voluntary compromise with the debtors and other creditors to provide TOPrS with a distribution in return (in part) for the release in Article V. This settlement agreement is the subject of a Rule 9019 settlement motion being heard with confirmation, and may properly be included in the plan under 11 U.S.C. § 1123(b)(6). Section 1123(b)(6) provides that a plan may "include any other appropriate provision not inconsistent with the applicable provisions of this title." The voluntary release of nondebtors in exchange for a distribution of stock and other assets that would otherwise go to more senior creditors does not conflict with any provision of the Bankruptcy Code.

For these reasons, the court overrules the Lead Plaintiffs' objection that the TOPrS release violates § 524(e) and or is otherwise impermissible under the Bankruptcy Code.